UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACKIE GUDGER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-02145 |
| | § | |
| CITGO PETROLEUM CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Pending before the Court is the defendant's, CITGO Petroleum Corporation ("CITGO") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket No. 20). The plaintiff, Jackie Gudger ("Gudger"), has submitted a response (Docket No. 28) and an appendix of exhibits (Docket No. 28-1).  Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS CITGO's motion in its entirety.

**II.    FACTUAL BACKGROUND**

CITGO refines, markets, and transports petroleum products. The company is headquartered in Houston, Texas and employs over 3,200 people nationwide. Jackie Gudger is an African-American former employee of CITGO. Gudger worked as a Senior Administrative Assistant in CITGO's Health, Safety, Security, and Environmental Department ("HSSE") from January 2007 until her termination in January 2012. The relevant time frame for the issues arising in this case begins in January 2011.

In January 2011, Shelby Davis, a white employee of CITGO, filed an allegation of harassment against Gudger for her actions during a department planning meeting. According to

Davis, Gudger insinuated that Davis "suck[ed]" for picking a certain hotel for the previous year's departmental retreat. Later in that same meeting, Gudger took the meeting off-topic by arguing with Davis about her refusal to reimburse Gudger for a boot camp class that Gudger believed qualified for reimbursement under CITGO's fitness initiative. Yvonne Holmes, an African-American Human Resources ("HR") Manager at CITGO investigated the allegations and interviewed individuals present at the meeting. The first time Holmes met with Gudger about the complaint, Gudger denied Davis' allegations and submitted a counter-complaint that she was harassed by Davis in the same meeting. The investigation concluded in early February when Holmes informed Gudger that HR found that she had acted inappropriately. Holmes also spoke with Gudger about behaving in a professional manner at all times.

In April of that same year, Dennis Calhoun, Gudger's supervisor, reported to HR that Gudger had pushed back on assignments given to her. In May, Paulette Fonteno, a HSSE Manager, forwarded HR allegedly unprofessional emails from Gudger. HR then met with Calhoun regarding Gudger.

In July, Gudger submitted a complaint about Fonteno in connection with Gudger's mid-year review with Calhoun. In that meeting, Calhoun relayed to Gudger that Fonteno stated Gudger was difficult to work with. HR Business Partner and Hispanic male, Edgar Ordorica interviewed Gudger about her complaint. After that interview, Gudger amended her complaint to add Calhoun and Doris Jones, an African-American contract worker at CITGO. Holmes met with Gudger regarding her amended complaint. Ordorica continued his investigation of Gudger's complaint by interviewing others in HSSE. All interviewees detailed situations in which Gudger had acted or spoken unprofessionally.

That same day, Ordorica met with Gudger regarding the complaints about her behavior from her colleagues in HSSE. In that meeting, Gudger complained about a comment Fonteno made and said that she, Gudger, believed that things had "become racial." Gudger stated that no racial comments had ever been made toward her, and during that meeting she was unable to articulate exactly why she felt things had become racial.

Shortly after Ordorica met with Gudger, he returned to his office and was met by Fonteno, Hollis, and Jones. Jones, who was extremely upset and crying, claimed that Gudger had burst into her office, screamed obscenities, made remarks about Jones' sexual orientation, and physically threatened Jones. Ordorica noted that Jones was crying and visibly shaken.

The next day, Elena Sarango, another Hispanic HR representative, met with Gudger regarding Jones' complaint. Gudger denied Jones' allegation and claimed that Jones had actually threatened Gudger the day before. Gudger further claimed that she felt unsafe and planned to go to the police. Ordorica had a follow-up conversation with Gudger. During that discussion, he became skeptical of her version of events because of the different ways she articulated Jones' threat. During this conversation Gudger also mentioned that she called Jones' staffing agency, an action that is against CITGO policy. Later that same day, Gudger emailed HR to inform them of a racially charged comment Fonteno allegedly made to Gudger outside of CITGO's Health Center on the prior day, i.e. "Black is Whack in that she's got Doris on her back".

In early August, Ordorica met with Fonteno and Jones. Fonteno denied Gudger's allegations and Jones repeated the same story about Gudger threatening her a few days prior. Ordorica also met with Gudger. In that meeting, Gudger contradicted herself about where Fonteno made the derogatory comments. Ordorica claims that Gudger disclosed that she

attempted to surreptitiously record Fonteno. Such conduct is a violation of CITGO policy. Gudger claims that Ordorica misheard her.

Ordorica informed Calhoun that HR would begin investigating claims by employees in HSSE that Gudger pushes back on work. When that investigation concluded in mid-August, Ordorica met with Calhoun and discussed terminating Jones and Gudger. Ultimately, they decided to issue Gudger a Final Warning Letter. In late September, Ordorica met with Gudger and Calhoun, informed Gudger of the results of the investigation, and issued a Final Warning Letter. The Final Warning Letter detailed instances where HR found that Gudger violated CITGO policies and advised Gudger "to seek immediate improvement" in her "behavior."

Less than four months later, on January 9, 2012, Fonteno emailed HR and informed them of three incidents in which Gudger allegedly harassed and attempted to provoke Jones: by screaming at Jones as they both approached the exit gate in the parking garage on October 26, 2011; by blocking the exit doors so Jones could not leave on November 14, 2011; and by rushing Jones in the parking garage, but backing off when she noticed Fonteno in the area on January 4, 2012.

On January 10, 2012, Marilenny Lopez, an HR Business Partner, interviewed Fonteno regarding her allegations. Lopez then met with Calhoun. On January 11, she interviewed Gudger in person and Jones by phone. Gudger denied Fonteno's allegations; however, Jones corroborated them.

On January 12, Lopez recommended to the head of HR that Gudger be terminated. The head of HR approved the termination. However, the decision required the approval of Calhoun and CITGO's Vice-President of Refining, Eduardo Assef. At the time, Assef was out of the

office so Gudger was suspended pending his return and approval. In the meantime, CITGO received Gudger's EEOC charge on January 13. Gudger was terminated on January 19, 2012.

## III.   CONTENTIONS OF THE PARTIES

### A.  CITGO's Contentions

CITGO argues that Gudger's claims of discriminatory disciplinary action, discriminatory termination, and unlawful retaliation all fail because Grudger is unable to make a *prima facie* case with respect to each claim. Specifically, CITGO contends that Gudger is unable to show that she was subject to an "adverse employment action" with respect to her disciplinary claim; cannot point to any "similarly situated" employee that was treated more favorably than herself with respect to her termination claim; and cannot demonstrate a causal connection between any protected activity in which she engaged and CITGO's decision to terminate her employment. Moreover, even if Gudger were able to make out a *prima facie* case for each claim, CITGO contends that it has presented legitimate, nondiscriminatory reasons for terminating Gudger, and that she is unable to show that those reasons are a subterfuge for malign motives.

CITGO also argues that Gudger's hostile work environment claim fails. It argues that Gudger is unable to demonstrate that she was subjected to any race-based harassment, let alone race-based harassment that was so severe or pervasive that it altered the terms and conditions of her employment.

### B.  Gudger's Contentions

Gudger argues that she can establish a *prima facie* case on her discriminatory disciplinary action, termination and retaliation claims, and that CITGO's proffered reasons for terminating her are wholly pretextual. Gudger contends that the Final Warning Letter constitutes an adverse employment action. Concerning similarly situated employees, Gudger argues that the two white

females in HSSE were given an opportunity to improve their behavior through a Performance Improvement Plan ("PIP") before their employment ended. Additionally, she maintains that the brief, six-month time period between her formal complaints of harassment and her termination, and the mere six days that passed between CITGO's receipt of her EEOC charge and her termination, establish a causal connection between her protected activities and CITGO's decision to terminate her. Finally, Gudger contends that her documented complaints of "racial" harassment eventually culminated in her termination. Surely, the argument goes, this altered the terms of her employment.

## IV.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951,

954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, (1986)).

## V.   ANALYSIS AND DISCUSSION

### A.   Discrimination Claims

Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In employment discrimination cases, such as the one *sub judice*, discrimination under Title VII may be proven through either direct or circumstantial evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The Fifth Circuit has held that in cases where no direct evidence[1] of discriminatory intent has been produced, proof by means of circumstantial evidence must be evaluated using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179 – 80 (5th Cir. 1999)).

Utilizing the *McDonnell Douglas* burden-shifting framework, the Fifth Circuit has restated the test as follows:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the *prima facie* case is

---

[1] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *See Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

> dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the
> employer's proffered reason is not true but is instead a pretext for discrimination;
> or (2) that the employer's reason, while true, is not the only reason for its conduct,
> and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (citations and internal quotation marks omitted); *see also Turner*, 476

F.3d at 345 (internal citations omitted); *Septimus*, 399 F.3d at 609 (internal citations omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he

ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing*

*Prods., Inc*., 530 U.S. 133, 143, 120 S.Ct. 2097, 2107, 147 L. Ed. 2d 105 (2000) (quoting *Texas*

*Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Thus, Gudger "can avoid summary

judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the

employer's stated reasons was not what actually motivated the employer and (2) creates a

reasonable inference that race was a determinative factor in the actions of which plaintiff

complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141

(5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996); *Rhodes*

*v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996) (overruled on other grounds)).

      To establish a *prima facie* case of race discrimination under Title VII, in accordance with

the *McDonnell Douglas* burden-shifting framework, Gudger must demonstrate that she: "(1) is a

member of a protected class; (2) was qualified for her position; (3) was subject to an adverse

employment action; and (4) was replaced by someone outside the protected class or, in the case

of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye*

*v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (internal quotation

marks and citations omitted).

### 1.  Final Warning Letter

CITGO and Gudger contest whether the Final Warning Letter HR issued to Gudger constituted an "adverse employment action." The Court holds that it does not.

Under a Title VII discrimination claim, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (internal citation omitted). The discrimination prohibition in Title VII "was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995); *see also Burlington Nothern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2422, 165 L. Ed. 2d 323 (2006) (holding that the definition of "adverse employment action" is broader with respect to Title VII retaliation claims). A "disciplinary warning [letter]— without an attendant change in the terms or conditions of [one's] employment—does not qualify as an ultimate employment decision." *Carthon v. Johnson Controls Inc.*, 100 F. App'x 993, 998 (5th Cir. 2004).

The Final Warning Letter details incidents of Gudger's "inappropriate and unacceptable" conduct, advised her to improve her behavior, and warned that if she did not comply, a more severe disciplinary action, including termination, could result. By the letter's own terms, it did nothing more. Gudger has pointed to no evidence supporting her claim the Final Warning Letter altered the terms or conditions of her employment. As such, she has not established a *prima facie* case of discrimination.

The Court grants CITGO summary judgment on this claim.

2.    **Termination**

CITGO and Gudger dispute whether Leigh Galimberti, a white Environment Analyst, or Carol Peel, a white Administrative Assistant, both former employees of CITGO, were "similarly situated" to Gudger such that their, allegedly, more favorable treatment establishes the fourth element of Gudger's *prima facie* case.

The Fifth Circuit "[requires] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). There are several instances when circumstances can be said to be nearly identical. *See Lee*, 574 F.3d at 260 (providing examples). However, the most critical aspect of the inquiry is that "the plaintiff's conduct that drew that adverse employment decision [be] 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for purposes of an employment discrimination analysis." *Id.*

Gudger claims that Galimberti and Peel were similarly situated to her. She argues that CITGO gave performance improvement plans to Galimberti and Peel assisting them with their problems in the workplace. However, no similar plan was given to Gudger. She argues that this, allegedly, favorable treatment establishes a *prima facie* case of race discrimination.

The Court holds that neither Galimberti nor Peel was similarly situated to Gudger. Gudger was an Administrative Assistant and was ostensibly terminated for an escalating and alarming pattern of combative behavior in the workplace. Galimberti was an Environmental

Analyst with a host of job-related performance problems. Her position required different skills, more education, and more work experience. Furthermore, Galimberti's issue was deficient performance—her "problem solving skills [were] poor" and she did not "fully finish tasks"—not inappropriate behavior.

Like Gudger, Peel was an Administrative Assistant, but similarities between the two end there. Peel had time management issues—inability to meet deadlines, incorrect reporting of hours worked, working unauthorized overtime, arriving to work late and leaving work early, and occasionally, not showing up at all. Again, Gudger's problems related to her behavior in the workplace, not her ability to perform her job.

Because Gudger's conduct was not "nearly identical" to the conduct of Galmiberti or Peel, the Court finds that Gudger was not similarly situated to those comparators. Accordingly, Gudger has failed to establish a *prima facie* case of discriminatory termination.[2]

### B.     Retaliation Claim

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee for opposing an unlawful practice or asserting a charge, testifying, assisting, or participating in a Title VII proceeding or investigation. *Burlington Northern*, 548 U.S. at 59 (citing 42 U.S.C. § 2000e-3(a)); *see also Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). To establish a *prima facie* claim of retaliation under Title VII, Gudger must illustrate that: "(1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner*, 476 F.3d at 348 (citing *Fabela*, 329 F.3d at 414). "The burden-shifting structure

---

[2] Having found that Gudger has not established a *prima facie* case of discrimination, the Court does not discuss the issue of pretext. However, the Court notes that the submissions of the parties clearly demonstrate that CITGO had legitimate, nondiscriminatory reasons for terminating Gudger (her behavioral issues), and Gudger pointed to no evidence that creates a genuine fact issue as to whether CITGO's proffered reason for terminating her is pretextual.

applicable to Title VII disparate treatment cases, as set forth in [*McDonnell Douglas*], is applicable to Title VII unlawful retaliation cases." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000).

Gudger contends that she was terminated in retaliation for submitting complaints of harassment to HR and in retaliation for filing her EEOC charge. CITGO contends that Gudger cannot establish the necessary causal connection between those protected activities and her termination. Specifically, CITGO argues that the temporal proximity between Gudger's complaints of harassment and her termination is too attenuated to be considered causal. Furthermore, CITGO contends that it did not receive notice of Gudger's EEOC charge until after it had already made the decision to terminate her; hence, her termination cannot have been in retaliation for filing the charge.

The only causal link Gudger identifies between her complaints of harassment and her termination is that the events occurred six months apart. This assertion does not create a fact issue as to whether Gudger's termination was in retaliation for complaints that she submitted six months earlier. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept *mere* temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (emphasis added) (internal citation omitted); *see also Amsel v. Texas Water Development Bd.*, 464 F. App'x 395, 402 (holding that a time period greater than two months "is not, by itself, enough to show a causal connection based upon temporal proximity alone").[3] CITGO's investigation into Gudger's

---

[3] Gudger points to *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992) as an instance in which the Fifth Circuit found a causal connection when the gap between the protected activity and defendant's alleged retaliation was fourteen months. In *Shirley*, the plaintiff submitted an affidavit alleging that her boss "mentioned her EEOC

complaints concluded in August and it found that all were without merit. Gudger, herself, admitted that some of her complaints were trivial and made in order to protect her job. Because Gudger has produced no evidence demonstrating a causal link between her complaints of harassment and her termination, she has not established a *prima facie* case of retaliation.

Gudger next argues that the fact she was terminated six days after CITGO received notice that she had filed an EEOC charge evidences the necessary causal link to establish a *prima facie* case of retaliation. The Court disagrees. Gudger's own submission clearly establishes that the decision to terminate her employment was made on January 12, 2012. CITGO received notice of Gudger's charge of discrimination on January 13. Gudger's unsubstantiated assertion that CITGO's Legal Department altered the date of receipt does not create a genuine issue as to when CITGO receive the EEOC charge. Therefore, Gudger has not demonstrated a causal link between her protected activity and her termination. Accordingly, the Court grants CITGO summary judgment on Gudger's retaliation claim.[4]

### C.      Hostile Work Environment

To prevail on a Title VII hostile environment claim, Gudger must show that: "(1) [She] belongs to a protected group; (2) [she] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yello Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th

---

complaint to her at least twice a week and 'harassed her to death about it.'" 970 F.2d at 43. By contrast, Gudger points to a six-month gap, and nothing else, as evidence of causation. This will not due.

[4] Having found that Gudger has not established a *prima facie* case of retaliation, the Court does not discuss the issue of pretext. However, the Court notes that the submissions of the parties clearly demonstrate that CITGO had legitimate, non-retaliatory reasons for terminating Gudger (her behavioral issues), and Gudger presented no summary judgment evidence that creates a genuine fact issue as to whether CITGO's proffered reason for terminating her is unworthy of credence.

Cir. 2002)). A work environment is hostile when it "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78, 118 S. Ct. 998, 1001, 140 L. Ed. 2d 201 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L. Ed. 2d. 295 (1993)). In other words, Gudger must show that her workplace environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that [she] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998). To make this determination, a court must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88 (quoting *Harris*, 510 U.S. at 23).

Construing all the facts and inferences in Gudger's favor, as the Court must, the conclusion remains inescapable that Gudger's claim fails as a matter of law. She has failed to present evidence that creates a fact issue as to whether the harassment that she allegedly faced was based on race, or whether it affected a term or condition of her employment. Gudger's complaint that she believed the harassment had become "racial" is no evidence of racial discrimination. In fact, she admitted that no one had made any racial comments toward her. Although she did later allege that Fonteno made a racially charged comment to her, that "offhand comment … will not suffice to survive [a motion for] summary judgment." *Hockman v. Westward Comm., LLC*, 407 F.3d 317, 328 (5th Cir. 2004).

Gudger also alleged that Jones, her African-American colleague, threatened her life. Gudger made this claim after being questioned about the complaint Jones made against her the

previous day, in which Jones claimed Gudger threatened her with physical harm. When Gudger was asked why she did not report Jones' alleged threat immediately after it occurred, she responded, "I didn't think about it." Hence, it appears that Gudger did not perceive the harassment to be sufficiently abusive to report it.

In sum, whether Gudger subjectively felt that her work environment was abusive, the totality of the circumstances, viewed in the light most favorable to Gudger, is insufficient for a reasonable jury to find that an objectively hostile environment existed. To the extent that Gudger asserts that her harassment culminated in her termination, the evidence does not support this claim. There is no evidence that CITGO terminated her because she was being harassed, or because of her complaints of harassment. CITGO terminated her because of her own inappropriate behavior. Accordingly, the Court grants CITGO summary judgment on Gudger's hostile work environment claim.[5]

## VI.   CONCLUSION

Based on the foregoing discussion, the Court GRANTS CITGO's motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED on this 4th day of October, 2013.

Kenneth M. Hoyt
United States District Judge

---

[5] Having found that Gudger has not pointed to facts sufficient for a jury to find that any harassment she faced was based on her race or that such harassment affected a term or condition of her employment, the Court does not reach the issue of CITGO's *Faragher/Ellerth* defense.